UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>JOSHUA BARRERA,<br>    Defendant. | Case No. 2:23-CR-00084-JLS<br><br>**ORDER DENYING MOTION TO SUPPRESS**<br><br>**ORDER REQUIRING FILING OF REDACTED VERSION OF THIS ORDER ON PUBLIC DOCKET** |

This matter is before the Court on Defendant's Motion to Suppress. (Doc. 51.) It is fully briefed (Docs. 55 (Opposition) and 58 (Reply)), and was heard on July 28, 2023, at which time the Court took the matter under submission. As set forth herein, the Court DENIES the Motion to Suppress.

I.   **FACTUAL BACKGROUND**

State police applied for, and received, an arrest warrant for Defendant and two search warrants for places including Defendant's residence. (*See* Mot. at 8-9; Opp. at 2-5; Docs. 61-62 (Opp. Ex. 1 (application for initial search warrant and arrest warrant) (sealed) & Ex. 3 (application for second warrant) (sealed).) Pursuant to the arrest warrant, Defendant was taken into custody on the state charge of maintaining a place for selling a controlled

substance, in violation of California Health and Safety Code § 11366, based on his work as a security guard at an unregistered marijuana dispensary. (Mot. at 8, 13.)

After his arrest, Defendant made statements to police informants who shared a cell with him. (Opp. at 3.) His statements to the informants, surreptitiously recorded by the police, resulted in the police seeking a second search warrant to recover a firearm and a firearm accessory that Defendant told cellmates he had thrown out of the window when police arrived to execute the initial search warrant. (Opp. at 3-4; Doc. 62 (second warrant application).) Upon execution of the second search warrant, authorities recovered the firearm and a "switch" or "auto sear," a small device designed to convert a firearm into a fully automatic weapon. Based on the recovery of these items, Defendant was charged in this case with possession of a machine gun in violation of 18 U.S.C. § 922(o)(1). (*See* Doc. 1, Indictment.) Defendant challenges both search warrants[1] and the arrest warrant, including the validity of the initial state charge and the use of Defendant's statements in obtaining the second search warrant.

## II.    LEGAL STANDARDS

### A.    Search Warrant Validity

Warrants must be supported by a showing of probable cause. "Probable cause exists if the affidavit [offered in support of the search warrant application] provides a 'substantial basis' for believing that criminal activity might have been occurring at the [premises to be searched]." *United States v. Martinez-Garcia*, 397 F.3d 1205, 1216 (9th Cir. 2005). A warrant must state with particularity "both the place to be searched and the person or things to be seized." *United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015) (internal quotation marks omitted). "The description must be specific enough to enable the person

---

[1] As discussed at the hearing, the first search yielded no fruits to suppress; the statements that led to the second search warrant were the fruits of the arrest warrant. Thus, although the Court discusses the validity of Defendant's arrest pursuant to the arrest warrant, it does not separately discuss the validity of the first search warrant.

2

conducting the search reasonably to identify the things authorized to be seized." *Id.* (internal quotation marks omitted).

Arrest warrants based on probable cause carry with them "'the limited authority to enter a dwelling in which the suspect lives where there is reason to believe the suspect is within.'" *United States v. Gorman*, 314 F.3d 1105, 1110 (9th Cir. 2002) (*Payton v. New York*, 445 U.S. 573, 603 (1980)).

### B. Exclusionary Rule

Generally, evidence seized pursuant to an invalid warrant is subject to suppression under the exclusionary rule. *See United States v. Henderson*, 906 F.3d 1109, 1114-15 (9th Cir. 2018) ("The suppression of evidence is 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'"). The fruit of the poisonous tree doctrine is an extension of the exclusionary rule. *Lingo v. City of Salem*, 832 F.3d 953, 957-58 (9th Cir. 2016) ("The 'fruit of the poisonous tree' doctrine extends the exclusionary rule to require suppression of other evidence that is derived from—and is thus tainted by— the illegal search or seizure."). "[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quotation marks omitted).

### C. Good-Faith Exception and *Franks* Hearings

However, because the exclusionary rule is judicially created rather than constitutionally required, the Supreme Court has held that the rule's deterrent function is not served when police conduct is "pursued in complete good faith." *United States v. Leon*, 468 U.S. 897, 919 (1984) (internal quotation marks omitted). Thus, the exclusionary rule is subject to a good faith exception that permits introduction of evidence obtained where officers act on an objectively reasonable search warrant that is subsequently invalidated. *Id.* at 918-21. Nevertheless, the good faith exception does not apply where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew

was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923.

To challenge the applicability of the good faith exception, a defendant may seek a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). To be entitled to a *Franks* hearing, the accused must make a "substantial preliminary showing" that law enforcement officers made a false statement or material omission "knowingly and intentionally, or with reckless disregard for the truth," and that the statement or omission was "necessary to the finding of probable cause." *Id.* at 155-56.

A determination of entitlement to a *Franks* hearing has two steps. "First, the district court determines whether the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *Martinez-Garcia*, 397 F.3d at 1215. Next, if the court concludes the officer made misleading statements, the court then examines whether, "'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.'" *Id.* (quoting *Franks*, 438 U.S. at 156). "If the corrected warrant is lacking in probable cause, then 'the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.'" *Frimmel Mgmt., LLC v. United States*, 897 F.3d 1045, 1052 (9th Cir. 2018) (quoting *Franks*, 438 U.S. at 156).

## III. INITIAL SEARCH WARRANT AND ARREST WARRANT

### A. The Arrest Warrant Was Valid

As part of a homicide investigation, Deputy Francis Hardiman entered a marijuana dispensary in search of surveillance video of the surrounding area from the night of the homicide. (*See* Opp. Ex. 1 at 11-13 (sealed).) By accessing a state database maintained by the controlling authority, the officer learned that the dispensary was not licensed. (Opp. at 15.) Detectives searched the dispensary pursuant to a warrant (not challenged here) and recovered video showing a security guard (identified as Defendant) for the dispensary interacting with suspects identified as "S4" and "S1", the latter of whom Defendant "appear[ed] to be familiar with." (*Id.* at 15-16.)

Police verified Defendant's residence by, *inter alia*, observing him there along with a Silver Audi they had previously seen him driving. (*Id.*) On the basis of this information, on December 13, 2022, the deputy applied for and obtained an arrest warrant for Defendant and a search warrant for Defendant's residence. (*See generally id.*)

In the Motion and at the hearing, defense counsel challenged the warrant on the basis that Defendant is not sufficiently identified as a security guard. (*See* Mot. at 15-16 (noting that "the detective recklessly omitted that [Defendant] worked as a security guard at the dispensary").) But the warrant application clearly identifies Defendant as a security guard. (Opp. Ex. 1 at 15-16.) Defendant does not contend that he had another role. Defendant's description in the warrant application (5'10", 200 pounds, bowl haircut and an Abraham Lincoln beard), matches a photo identified as a security guard by his co-worker, which, in turn, matches a photo identified as Defendant's commercial driver license photo, obtained by police using facial recognition software. (*Id.* 16-18.)

The warrant application clearly specifies that the basis for Defendant's arrest is not related to the murder; instead, the arrest warrant was sought for maintaining a place for selling a controlled substance, in violation of California Health and Safety Code § 11366. (*Id.* at 2.) Defendant contends the arrest warrant lacks a probable cause basis for this charge. (Mot. at 12-13.) Defendant argues that his work as a security guard at an unlicensed dispensary is insufficient to establish probable cause for a violation of Health and Safety Code § 11366, which prohibits the "open[ing of] or maintain[ing of] any place for the purpose of unlawfully selling, giving away, or using any controlled substance [as specified]."

"Cannabis," which includes marijuana, falls within the definition of "controlled substance." *See* Health & Safety Code § 11054(d)(13). Sale of cannabis is generally prohibited in California, *see* Health and Safety Code § 11359, but such sale is permitted by licensed dispensaries. *See* Cal. Code Regs. tit. 4, § 15000 et seq.

The Government contends that Defendant's work as a security guard at an unlicensed cannabis dispensary was sufficient to establish probable cause for the charge of

maintaining of a place for the sale of a controlled substance on an aiding and abetting theory. (Opp. at 9-10.) Under California law, a person can be held to answer for a crime where there is a perpetrator who commits a crime, the defendant knew the perpetrator committed the crime, the defendant intended to aid and abet the crime's commission, and the defendant's words or conduct did in fact aid and abet the crime's commission. *See* Judicial Council Of California Criminal Jury Instruction 401.

The probable cause standard requires only that there be a "substantial basis" for believing that a suspect is involved in criminal activity. Here, the California statutory scheme that criminalizes sale of cannabis; the only exception is the sale through licensed dispensaries. Thus, probable cause was established with respect to Defendant as to all elements:[2] the sale of cannabis by someone not licensed to do so, Defendant's knowledge that the sale is occurring, Defendant's intent to facilitate the sale by helping to secure the store, and Defendant's conduct as a security guard actually aiding in the sale.

### B.   Even if Probable Cause Was Lacking, Defendant's Arrest Was Valid Under the Good-Faith Exception

Even if the arrest warrant lacked probable cause, it was valid on its face, and under the good-faith exception, officers were entitled to rely on it unless the judge issuing the warrant was misled by the application as a result of a knowing false statement or a statement with reckless disregard of its truth. *Leon*, 468 U.S. at 923. Here, the test for a *Franks* hearing to challenge any good faith reliance on the arrest warrant is not met.

Defendant has identified five statements (or omissions) that he contends were misrepresented or omitted. (Mot. at 15-16.) First, Defendant contends that the application failed to identify him as a security guard. Second and third, Defendant contends that that the application did not disclose that he had been employed less than six months and that he did not know whether the dispensary was licensed. Fourth, the affiant failed to disclose

---

[2] This is more than the law requires: "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).

that the City of Compton did not enforce laws against the sale of cannabis by many unlicensed marijuana dispensaries operating within the City. And finally, Defendant contends that the affidavit falsely implied he was "aware of or involved in a murder." (*Id.* at 16.)

The Court first determines whether these five statements (or omissions) are "intentionally or recklessly made false or misleading statements or omissions in support of the warrant." *Martinez-Garcia*, 397 F.3d at 1215. Defendant's first omission is simply incorrect; the affiant officer disclosed he was a security guard at the dispensary.

Defendant's fifth statement, regarding the details of the murder investigation in the warrant application, refers to details disclosed in the affidavit that Defendant contends are misleading, but are not. It is clear that the warrant is sought in connection with a homicide investigation, but Defendant's role is limited to his seeming "familiar[ity] with" a suspect and his presence at the dispensary on the night of the murder. Despite submitting a detailed declaration with his motion, Defendant does not contend these facts are incorrect. (*Compare* Opp. Ex. 1 at 16 *with* Doc. 52-1, Barrera Decl.) The warrant application clearly specifies Defendant's offense as maintaining a place to sell drugs, and probable cause is established based on his work as a security guard for the dispensary. Thus, as to the first and fifth statements, the first step for a *Franks* hearing is not met.

Defendant's second, third, and fourth statements were omitted from the application. There is no indication that their omission was intentional or reckless. Nevertheless, if the Court were to apply the second step of the *Franks* test, it would consider whether the inclusions of these omissions would render the application "'insufficient to establish probable cause.'" *Martinez-Garcia*, 397 F.3d at 1215 (quoting *Franks*, 438 U.S. at 156). Here, none of the omissions were misleading; indeed, none of them are even relevant to the probable cause determination.

The second statement, related to Defendant's length of employment, is irrelevant to the probable cause determination. The probable cause determination would not change based on whether Defendant was employed for six weeks, six months, or six years.

There is no allegation that the police knew (or were reckless in not knowing) that Defendant was unaware of the licensing status of the dispensary. Therefore, this statement was not intentionally or recklessly made. But even if Defendant's ignorance as to the licensing status of the dispensary were known to the affiant, this knowledge is not relevant to the probable cause determination. The relevant knowledge here is not of Defendant's understanding of the law; rather, it is his knowledge of whether the dispensary sold cannabis, a fact which Defendant does not deny.

Defendant's fourth statement, about City of Compton's lax enforcement (or complete lack of enforcement) as to unlicensed cannabis dispensaries is also not relevant to probable cause. There is no room in the application of the probable cause standard for determining to what extent a state-wide criminal prohibition is actually enforced by local authorities. Here, California's statutory and regulatory scheme set up the default position that the sale of cannabis is criminalized, but that licensing can transmute that otherwise illegal conduct into legal transactions. Lack of a law's enforcement does not change criminal liability for that law's violation. Thus, any failure to disclose such lack of enforcement in the warrant application is irrelevant to probable cause.

Thus, none of these five statements (or omissions) entitle Defendant to a *Franks* hearing. Instead, on this record, the warrant application sets forth probable cause to believe that Defendant was guilty of a violation of § 11366 on an aiding and abetting theory. Even if it did not, it is a facially valid arrest warrant subject to the good faith exception.

### IV. JAIL CELL RECORDING

Defendant contends his Sixth Amendment right to counsel was violated when he was placed in a recorded cell with other inmates who acted as government agents to attempt to get Defendant to implicate himself in other crimes. (Mot. at 20-21.)

But the right to counsel attaches only when judicial proceedings have been initiated against a defendant. *United States v. Hayes*, 231 F.3d 663, 670 (9th Cir. 2000) ("[I]t has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated

against him."). At the time Defendant was placed in the cell, he had been arrested, but he had not been charged, and in fact he was released with no charges being filed. (*See* Berrera Decl. ¶ 13.)

Defendant relies on *Illinois v. Perkins*, 496 U.S. 292 (1990). But the holding of *Perkins* is that *Miranda* warnings are not required where a suspect speaks to an undercover agent because *Miranda* is concerned with the coercive effect of police-dominated interrogation. Where a suspect is unaware that he is speaking with police, that concern is not implicated. *See id.* at 296-300. Defendant also relies on *Massiah v. United States*, 377 U.S. 201 (1964), but that case, which holds that the government may not use an undercover agent to elicit statements from a suspect, applies only where the Sixth Amendment right to counsel had already attached. *See id.* at 205-06. The other cases upon which Defendant relies are distinguishable on this ground as well. *See Maine v. Moulton*, 474 U.S. 159, 176 (1985) ("Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent."); *United States v. Henry*, 447 U.S. 264, 269 (1980) ("The present case involves incriminating statements made by the accused to an undisclosed and undercover Government informant while in custody and after indictment.").

Defendant's recorded statements were constitutionally obtained.

## V. SECOND SEARCH WARRANT

On the afternoon of the same day of Defendant's arrest, police sought a second search warrant for Defendant's residence.

The warrant application (Opp. Ex. 3) describes Defendant's recorded statement about throwing the gun out of the window, and notes that one of the detectives heard a noise coming from the east side of the residence when the initial warrant was executed. (*Id.* at 7-8.) Specifically, the application states that Defendant was recorded as saying that when the search warrant was executed, he threw a .45 handgun and a "switch" out of the window to avoid discovery of it by officers. (*Id.* at 10.) The application explains that

"switch" is slang for an auto-sear, which is a device that converts a semi-automatic handgun into a fully automatic weapon. (*Id.*) Possession of such guns are illegal under both state and federal law. *See* Cal. Penal Code § 32625; 18 U.S.C. § 922(o)(1). Executing the search warrant, officers recovered the gun in a place consistent with Defendant's recorded statement. (*See* Doc. 55-1, Diaz Decl. ¶ 5, Opp. Ex. 4 (photo).) This discovery led to the present charged offense. (*See* Indictment at 1.)

Based on Defendant's constitutionally obtained recorded statements, the second search warrant is supported by probable cause and there is a nexus between the residence and the criminal activity. Therefore, the items of evidence recovered, the handgun and the "switch," are not subject to suppression.

## VI.   SERVICE OF THE WARRANTS

Defendant contends the warrants were not properly served. (Mot. at 19-20.) He relies on the federal rule, Federal Rule of Criminal Procedure 41. But at issue here are state-court warrants that were issued and served pursuant to state-court procedures. Moreover, Defendant acknowledges he received the first page of the warrants. (*Id.* at 19.) The remainder of these warrants were ordered sealed by the judge to protect the integrity of an ongoing investigation. (*See* Opp. Ex. 1 at 3 & Ex. 3 at 2.)

## VII.   CONCLUSION

As set forth herein, the Court DENIES the Motion to Suppress.

Because the Government sought (and received) leave to have its exhibits filed under seal, the Court has ordered this document to be filed under seal as well. Within three days of the entry of this Order, the Government shall file an appropriately redacted version of this Order on the public docket.

**IT IS SO ORDERED.**

DATED: August 7, 2023

_____
HON. JOSEPHINE L. STATON
United States District Judge